```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARK TUMINELLO,

                              Plaintiff,

        - against -

JOHN DOE, RICHARD ROE and HARLOW
HO, individually and as employees of the
Nassau County Sheriff's Department, and
the COUNTY OF NASSAU,

                              Defendants.
-------------------------------------------------------------X
```

**MEMORANDUM AND ORDER**
10 CV 1950 (DRH) (ARL)

**APPEARANCES:**

**ARTHUR V. GRASECK, JR., ESQ.**
Attorney for Plaintiff
99 Meredith Lane
Oakdale, NY 11769

**OFFICE OF THE NASSAU COUNTY ATTORNEY**
Attorneys for Defendant County of Nassau
One West Street
Mineola, NY 11501
BY:    Liora M. Ben-Sorek, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Mark Tuminello ("plaintiff" or "Tuminello") commenced this Section 1983 action against the County of Nassau (the "County") and certain unidentified employees of the Nassau County Sheriff's Department for violating his constitutional rights under the Fourth and Fourteenth Amendments when they allegedly subjected him to an intrusive strip search. Presently before the Court is the County's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the County's motion is GRANTED.

## BACKGROUND

The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.[1]

Tuminello was arrested on July 14, 2007 at approximately 2:45 p.m. and transported to the Nassau County Police Department, First Precinct. (Defs.' 56.1 Stmt. ¶¶ 3-4) After being processed, he was transported to Police headquarters in Mineola. (*Id.* ¶ 3.) On July 15, 2007, Plaintiff appeared in Nassau County District Court for arraignment on a charge of menacing. (*Id.* ¶ 5.) Following his arraignment, Tuminello was transported to the Nassau County Correctional Center ("NCCC"). (*Id.* ¶ 6.) Plaintiff was admitted to NCCC on July 15, 2007 at 1:39 p.m. (*Id.* ¶ 7.) At 2:54 p.m., plaintiff was discharged from the NCCC after his brother posted his bail (*Id.* ¶¶ 8-9.)

---

[1] Local Civil Rule 56.1 ("Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence in the record supporting each such fact. *See* Local R. 56.1(a), (d). Rule 56.1 further instructs that where a paragraph is not specifically controverted by the opposing party it "will be deemed to be admitted for purposes of the motion." Local R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). However, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). Here, the plaintiff only attempts to controvert four paragraphs contained in the defendant's 56.1 Statement and, of those four, only one cites to any sort of record evidence. Accordingly, all of the material facts set forth in defendant's 56.1 Statement with the exception of paragraph nine are deemed admitted to the extent that they are adequately supported with record evidence.

The NCCC policy in effect in July 2007 for the inmate admission process (hereafter, "NCCC Policy") did not permit blanket strip searches of all inmates upon their admission to the NCCC.[2] (Defs.' 56.1 Stmt. ¶ 13.) Pursuant to the applicable NCCC Policy, "[i]f the detainee is not charged with a felony, such detainee will be ***thoroughly pat searched***" while those "[d]etainees with ***felony charges***, and all sentenced inmates, will be subject to a **strip search**." (Ben-Sorek Decl., Ex. D ("NCCC Policy") at 9-10.) Non-felon detainees, however, can be strip searched "based on a reasonable suspicion that the person may be concealing a weapon, or other form of contraband" on the condition that the strip search "will only be accomplished on approval of the Operations Supervisor" and the completion of a "Strip Search form." (NCCC Policy at 10.) Moreover, the applicable NCCC Policy defined "Strip Search" as a "visual search of an inmate's person/body after an inmate has removed his/her clothing" which does not include "physical contact between the inmate and the Officer conducting the search." (NCCC Policy at 2.)

Notwithstanding the above, Tuminello claims that he was subjected to an intrusive strip search while he was at the NCCC. (Pl.'s 56.1 Stmt. ¶ 9.) Specifically, Tuminello alleges that he was brought into a fifteen by fifteen foot room and two officers told him to take off his clothes and bend over and squat. (Ben-Sorek Decl., Ex. B ("Tuminello Dep.") at 27:23-28:17, 30:7-8, 34:18-35:7.) Tuminello further claims that one of the officers put a gloved finger up his rectum and turned his finger around. (Tuminello Dep. at 36:12-37:6.) The County, however, maintains

---

[2] Both parties request that the Court take judicial notice of unidentified testimony and/or determinations from a pending class action in connection with a former NCCC policy involving newly admitted inmate searches. Neither party, however, provides or identifies the specific evidence they wish this Court to take judicial notice of and consider as part of this case. Therefore, the parties' requests for judicial notice are denied. It is noteworthy, however, that whatever NCCC policy which is at issue in the pending class action is not the same policy at issue in this case.

that plaintiff was discharged without ever being searched. (Defs.' 56.1 Stmt. ¶ 9.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

II. <u>*Municipal Liability*</u>

A municipality may not be held liable under section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be liable if the alleged conduct was

5

undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decision making channels." *Monell*, 436 U.S. at 690-91. Therefore,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell*, 436 U.S. at 694).

The existence of a municipal policy or custom may be established in any of the following four ways. A plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk Cnty. Sheriff's Dep't*, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same).

6

Seeking summary judgment on plaintiff's *Monell* claim, the County argues that Tuminello failed to identify an unlawful or unconstitutional municipal policy or practice. In response, plaintiff submits a three-page opposition brief – devoid of citations to record evidence or supporting case law – in which he argues that there is evidence of *Monell* liability pursuant to both a County policy and practice. As to the purported County policy, there is no evidence in the record indicating that the purported strip search of Tuminello was based on a policy endorsed by the County. To the contrary, the applicable NCCC policy clearly stated that newly admitted non-felony inmates were to be thoroughly pat searched, not strip searched, and where strip searches were warranted, physical contact was prohibited. (Ben-Sorek Decl., Ex. D at 2, 9-10.)

The record also fails to raise a genuine issue of material fact on the issue of whether the purported strip search was conducted pursuant to a practice so persistent and widespread in the County that it constitutes a custom. The entirety of the evidence relied on by plaintiff consists of his own observations and experiences. Tuminello states that he "saw four other prisoners enter and leave the room in which I was strip searched." (Tuminello Aff. ¶ 4.) Based on this observation, Tuminello claims that "[i]t is apparent that each of them, like me, was subjected to an intrusive strip search, conducted while they were completely nude and involving placing a finger in their rectums." (Tuminello Aff. ¶ 5.) Tuminello, however, neither saw what occurred after each inmate went into the room nor did he have a conversation with any of the inmates regarding what transpired. (Tuminello Dep. at 32:20-23, 41:24-42:21, 43:21-44:11.) Thus, plaintiff's contention that four other inmates were subjected to the same intrusive strip search because they were brought into the same room in which plaintiff was strip searched is based on nothing more than mere conjecture. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)

7

("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation."); *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (plaintiff may not depend on "mere conjecture or speculation" to overcome a motion for summary judgment).

The remaining evidence proffered by Tuminello in support of a purported County practice consists of two purported strip searches of the plaintiff, one in July 2007, and the other dating back to 1996.[3] Even if the Court accepted as true plaintiff's version of what occurred on these two occasions, these isolated incidents are insufficient as a matter of law to show a County custom under the *Monell* standard. *See Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (concluding that evidence of two to three instances over a period of several years "fell far short" of showing a custom for purposes of *Monell* liability); *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees."); *see also Montgomery v. City of New York*, 2011 WL 1770849, at *3 (S.D.N.Y. May 9, 2011) ("[T]wo incidents together are insufficient to establish a custom or practice."); *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002) ("[*T*]*wo incidents* of unconstitutional conduct by low-level employees in a city agency with over 35,000 employees can never provide a reasonable basis for finding a *widespread* or *well-settled* custom."). Because plaintiff's *Monell* claim fails as a matter of law, the County is entitled to summary judgment.

---

[3] Plaintiff states in an affidavit that "[t]he strip-search to which I was subjected in July of 2007 at the N.C.C.C. was identical to the one to which I was subjected at the N.C.C.C. in 1996 after having been arrested on a non-felony offense." (Tuminello Aff. ¶ 6.)

### III.    *Unidentified Defendants*

Tuminello also brings a Section 1983 claim against three anonymous employees of the Nassau County Sheriff's Department who were allegedly responsible for the intrusive strip search. Because this claim is barred by the statute of limitations, it must be dismissed.

"It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Aslandis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993); *see also Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) ("Where a plaintiff names "John Doe" as a placeholder defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations period.").

Although under certain circumstances a plaintiff may seek to amend a pleading pursuant to Rule 15(c) and have it relate back to the date the original complaint was filed, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995); *see also Abreu*, 657 F. Supp. 2d at 363 ("The fatal problem for a plaintiff who has pled claims against a 'John Doe' defendant is that while 'Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties (under certain circumstances), . . . the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.'" (quoting *Barrow*, 66 F.3d at 470.)); *Sepulveda v. City of New York*, 2003 WL 22052870, at *2 (S.D.N.Y. Sept. 2, 2003) ("A proposed amendment to substitute a

named party for a John Doe defendant, however, is not the result of error, but rather the result of ignorance of the identify of the defendant at the time the complaint was filed.  Under [Rule 15 (c)], such an amendment does not constitute a 'mistake' concerning the identity of the proper party, and therefore it does not relate back to the date of the original complaint.").  Therefore, "a plaintiff who 'believe[s] that there exist[s] individual defendants who [are] potentially liable for his injuries, but [who does] not know their exact identities' and who waits until after the expiration of the limitations period to remedy this lack of knowledge (by naming a specific individual as a defendant), will find his claim to be time-barred." *Abreu*, 657 F. Supp. 2d at 363 (quoting *Malesko v. Corr. Servs. Corp.*, 229 F.3d 374, 383 (2d Cir. 2000) *rev'd on other grounds by* 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001)).

      Here, Tuminello's Section 1983 claim against the unnamed defendants accrued on July 15, 2007, and has since expired under the applicable three-year statute of limitations.  *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).  At no point did plaintiff seek to amend his pleading before the limitations period expired to substitute named parties for the unidentified individuals.  Nor does it appear that plaintiff even attempted to identify any of the unnamed defendants before discovery closed on March 30, 2012.  As such, plaintiff's cause of action against the unidentified defendants is untimely and must be dismissed.

## ***CONCLUSION***

      For the reasons set forth above, the County's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to close this case.

                                                                                         **SO ORDERED.**

Dated: Central Islip, New York
        April 30, 2013

                                                                                           /s/

                                                                 Denis R. Hurley
                                                                 Unites States District Judge